UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| ALEXANDER MHLANGA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 3:18-cv-00036<br>Chief Judge Crenshaw<br>Magistrate Judge Brown |
| JENNIFER HICKS, | ) ) ) | |
| Defendant. | ) | |

To: The Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge

**REPORT AND RECOMMENDATION**

Pending before the Court is Defendant's motion for summary judgment (Docket Entry No. 37). For the following reasons, the Magistrate Judge **RECOMMENDS** that this motion be **GRANTED.**

**I. INTRODUCTION**

Plaintiff, Alexander Mhlanga, filed this *pro se* action under 42 U.S.C. § 1983 against Defendant, Jennifer Hicks, in her individual capacity, asserting violations of his civil rights under the Fourth, Eighth and Fourteenth Amendments. Plaintiff contends that Defendant arrested him without probable cause and improperly issued a citation to him four days after his arrest.

Before the Court is Defendant's motion for summary judgment (Docket Entry No. 37), contending that Defendant had probable cause to arrest Plaintiff; Defendant did not violate Plaintiff's constitutional rights by submitting a citation four days after the traffic stop; Plaintiff does not allege any facts that Defendant committed an Eighth Amendment violation; that Plaintiff does not allege any facts constituting an Equal Protection violation; and that Defendant is entitled to

qualified immunity. Plaintiff has submitted various documents in opposition. (Docket Entry Nos. 43, 46, 47, and 54).

## II. SUMMARY OF PERTINENT FACTS[1]

On January 23, 2017, Plaintiff was stopped while driving in Robertson County, Tennessee, by Defendant, a Tennessee Highway Patrol ("THP") Trooper, when she observed that Plaintiff's license plate displayed on the rear of his vehicle was not illuminated and clearly visible. (Docket Entry No. 65, at ¶ 1). During the traffic stop, Defendant asked Plaintiff for his license and registration, but Plaintiff only handed her his Tennessee identification ("ID"). *Id*. at ¶ 2. Defendant ran Plaintiff's ID through the National Crime Information Center ("NCIC") database, and based on the information received, Defendant determined that Plaintiff was driving on a revoked license and was designated as a habitual offender pursuant to Tenn. Code Ann. § 55-10-616. *Id*. at ¶ 3; Docket Entry No. 37-3. Defendant contacted THP dispatch and requested THP dispatch to run Plaintiff's identification. *Id.* at ¶ 4. Defendant asked dispatch to confirm whether Plaintiff was a habitual offender, and dispatch responded affirmatively, "That's 10-4." *Id*.; Docket Entry No. 42, audio dispatch recording, at 00:35-00:47.

Prior to this traffic stop, Plaintiff had an extensive history of arrests for driving under the influence, driving on a suspended license, driving while a habitual offender, and driving on a revoked license. *Id*. at ¶ 18. Plaintiff was arrested on November 3, 2016 in Robertson County for driving on a revoked license and driving while a habitual offender, and on November 26, 2016 in

---

[1]The Magistrate Judge deems Defendant's statement of undisputed material facts (Docket Entry No. 39) undisputed as Plaintiff states that many of the facts are undisputed. See Docket Entry No. 65. Also, on some responses, Plaintiff states "disputed," but then goes on to essentially reiterate Defendant's statement of facts or in other instances fails to cite evidence that actually disputes Defendant's statement.

2

Davidson County for driving while a habitual offender and for a vehicle registration violation. *Id*. at ¶ 19.

Defendant and another officer at the scene asked Plaintiff if he was aware that his license was revoked and that he could not drive, and Plaintiff responded, "yes." *Id*. at ¶ 6. Plaintiff admits that he knew that he was driving on a revoked license and that it was illegal for him to do so. *Id*. at ¶ 7; Docket Entry No. 37-4, Plaintiff deposition at pp. 5-6, 8.[2] Defendant advised Plaintiff that she was going to arrest him for driving on a revoked license. *Id*. at ¶ 8; Docket Entry No. 42, video recording of traffic stop, at 21:22:30-50, 21:23:16-32.

As a result of the traffic stop, Defendant wrote Plaintiff citations for the improper display of the license plate (Tenn. Code Ann. § 55-4-110), violation of the light law (Tenn. Code Ann. § 55-9-702), and driving while designated as a habitual offender (Tenn. Code Ann. § 55-10-616). *Id*. at ¶ 9; Docket Entry No. 37, Exhibits 6 and 7. Plaintiff signed these citations on January 23, 2017. *Id*. Defendant submitted the citation for Plaintiff driving while designated a habitual offender to the Judicial Commissioner on January 24, 2017. (Docket Entry No. 37-7). Plaintiff was taken to the Robertson County Jail and bonded out that same day, January 24, 2017. (Docket Entry No. 65, at ¶ 17). Defendant did not have any contact with Plaintiff after January 23, 2017. *Id*. at ¶ 14.

In his deposition, Plaintiff testified that he did not know at the time of his arrest that Defendant was charging him for being a habitual offender. (Docket Entry No. 37-4, at p. 10). According to Plaintiff, he told Defendant that he was no longer a habitual offender, but that she ignored him. *Id*. This alleged conversation is not captured on the video. Defendant attests that she

---

[2]Unless otherwise stated, citations are to the Court's ecf pagination. References to actual deposition pages are denoted with a "p.".

3

does not recall Plaintiff telling her that he was no longer a habitual offender and that Plaintiff did not show her an order removing his status as a habitual offender. (Docket Entry No. 37-1, Defendant Affidavit, at ¶ 8). Plaintiff testified that he did not have any documentation with him at the time of his January 23, 2017 traffic stop that showed that his status as a habitual offender had been removed. (Docket Entry No. 37-4, at pp. 11-12)

On January 27, 2017, Defendant submitted to the Judicial Commissioner a citation for Plaintiff driving on a revoked license (Tenn. Code Ann. § 55-50-504) stemming from the January 23, 2017, traffic stop. (Docket Entry No. 65, at ¶ 10). The narrative section on the citation did not state the date the offense happened. (Docket Entry No. 37-8). However, Defendant attests that she explained to the Judicial Commissioner that she forgot to include the driving on a revoked license citation with the other citations that she issued on January 23, 2017. (Docket Entry No. 37-1, at ¶ 10). On January 27, 2017, the Judicial Commissioner signed the citation for driving on a revoked license, and Defendant subsequently handed the executed citation to the deputy on duty at the Robertson County Jail so it could be issued to Plaintiff. (Docket Entry No. 65, at ¶¶ 12-13).

Tennessee Department of Safety and Homeland Security ("DOSHS") policy requires THP troopers, while on routine patrol, to enforce all laws regulating the operation of vehicles, the licensing of drivers, vehicle registration laws, and state motor vehicle equipment laws. *Id*. at ¶ 15. DOSHS policy requires THP troopers to issue citations to persons when charged with a violation of any law. *Id*. at ¶ 16. DOSHS policy states that troopers should issue citations for driving while a license is suspended or revoked and that a custodial arrest may be made. *Id*. at ¶ 33; Docket Entry No. 37-17, at 6. DOSHS policy requires that troopers "will not allow any person whose privilege

4

to operate a motor vehicle in Tennessee has expired, been revoked, suspended, canceled or is unlicensed to operate a motor vehicle." *Id*.

On February 4, 2017, Plaintiff was arrested in Nashville, Davidson County, Tennessee. *Id*. at ¶ 20. According to Plaintiff, he was arrested when he "was getting off work in Davidson County when an officer whom [he] had called to settle a dispute at work ran [his] name . . . ." (Docket Entry No. 52, at ¶ 8). By way of hearsay, Plaintiff asserts that the officer "told [him] [he] had an outstanding warrant of [his] arrest from Robertson County." *Id*. However, the paperwork related to Plaintiff's February 4, 2017 arrest in Davidson County reflects that Plaintiff's arrest stemmed from Case No. GS793123 (vehicle registration violation of November 26, 2016 in Davidson County), Case No. GS793122 (driving while a habitual offender violation of November 26, 2016 in Davidson County), parole violation of 2012-B-1209 (driving while under the influence -- 4th offense or more violation related to offense committed on January 14, 2012 in Davidson County), and parole violation of 2014-A-77 (driving while a habitual offender violation related to offense committed on September 2, 2013 in Davidson County). (Docket Entry No. 65, at ¶ 20). The paperwork for Plaintiff's February 4, 2017 arrest does not reference the traffic stop on January 23, 2017 conducted by Defendant in Robertson County or any citations written by Defendant. *Id*. at ¶ 21.

On March 8, 2017, Plaintiff was presented with the citation that Defendant submitted for driving on a revoked license dated January 27, 2017, and was transported from the Davidson County Jail to the Robertson County Jail. *Id*. at ¶ 22. Plaintiff signed the citation and bonded out of the Robertson County Jail on March 9, 2017. *Id*. All of the charges arising from the January 23, 2017 and January 27, 2017 citations written by Defendant were dismissed. *Id*. at ¶ 23. Defendant

5

learned after Plaintiff filed this action that Plaintiff's status as a Habitual Motor Vehicle Offender was removed by Order of the Second Circuit Court for Davidson County on December 9, 2016. *Id*. at ¶ 34. A copy of that order was faxed to and received by the DOSHS on December 9, 2016. *Id*.

### III. LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party cannot simply "rest on its pleadings but must present some 'specific facts showing that there is a genuine issue for trial.'" *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). To defeat a motion for summary judgment, "the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (citing *Anderson*, 477 U.S. at 251). "However, a mere 'scintilla' of evidence in support of the non-moving party's position is insufficient." *Id*. (citing *Anderson*, 477 U.S. at 251). Finally, "'[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### IV. ANALYSIS

#### A. FOURTH AMENDMENT UNLAWFUL ARREST CLAIMS

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no

6

Warrants shall issue, but upon probable cause. . ." U.S. Const. amend. IV. "A person who has been the victim of an unlawful arrest or wrongful seizure under the color of law has a claim based on the Fourth Amendment guarantee that government officials may not subject citizens to searches or seizures without propr authorization." *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009). However, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citations omitted). "The validity of an arrest 'does not depend on whether the suspect actually committed a crime....'" *Goodwin v. City of Painesville*, 781 F.3d 314, 333 (6th Cir. 2015) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)). "Thus, 'in order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause.'" *Brooks*, 577 F.3d at 706 (citation omitted). "'Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Hoover v. Walsh*, 682 F.3d 481, 499 (6th Cir. 2012) (citation omitted) (alteration in original).

### 1. The Arrest on January 23, 2017

The undisputed facts show that on January 23, 2017, Defendant had probable cause to arrest Plaintiff as a habitual offender and for driving on a revoked license. Defendant ran Plaintiff's identification through NCIC and learned of Plaintiff's extensive history of arrests for various traffic violations and that Plaintiff was driving on a revoked license and was designated a habitual offender, a class E felony under Tenn. Code Ann. § 55-10-616(b). Defendant contacted THP dispatch to run

7

Plaintiff's identification, and dispatch confirmed that Plaintiff was designated as a habitual offender. Even if Plaintiff allegedly told Defendant that he was no longer designated a habitual offender, "both Tennessee and federal courts have held that NCIC reports are sufficient to support probable cause for an arrest." *Howard v. Fulcher*, No. 3:13-CV-550, 2014 WL 4851693, at *6 (M.D. Tenn. Sept. 29, 2014) (collecting cases); *Silver v. Giles*, No. 1:07-CV-103, 2009 WL 2242704, at *8 (W.D. Mich. July 23, 2009) ("For the purposes of determining civil liability for individual officers, the police are entitled to rely on the information provided by the dispatcher.") (citing *Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir.2003)). Defendant was able to reasonably rely on the NCIC report and dispatch's confirmation. Further, Plaintiff did not present any documentation to Defendant that showed that Plaintiff was no longer a habitual offender. Moreover, Plaintiff admitted at the time of the traffic stop that he was driving on a revoked license, and thus, Defendant had probable cause to arrest Plaintiff for that offense as well.[3]

Further, even if a Fourth Amendment violation could be shown regarding Plaintiff being improperly arrested for being deemed a habitual offender, Defendant would still be entitled to qualified immunity. "There are two general steps to a qualified immunity analysis. The court must determine whether 'the facts alleged show the officer's conduct violated a constitutional right' and whether that right was 'clearly established.'" *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) (citation omitted). To prove the second prong, a plaintiff must "show that 'the violation involved

---

[3]While Plaintiff asserts that the CAD report (also known as the Background Event Chronology, see Docket Entry No. 54, at 4-8) does not have Plaintiff listed as a habitual offender (Docket Entry No. 43, at 4; Docket Entry No. 47, at 5; Docket Entry No. 48, at ¶ 6; Docket Entry No. 54, at 5), Defendant never asserted that she relied on the CAD report in establishing probable cause for the arrest. Instead, Defendant relied partially upon the NCIC report that lists several instances of Plaintiff "Driving After Convicted as a Habitual Offender," (Docket Entry No. 37-3, at 1) and also on confirmation from dispatch that the Plaintiff was currently a habitual offender.

8

a clearly established constitutional right of which a reasonable person would have known.'" *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (citations omitted). "'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citation omitted). "But a lack of probable cause is not necessarily fatal to an officer's defense against civil liability for false arrest. Rather, an officer is entitled to qualified immunity under § 1983 'if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent.'" *Green v. Throckmorton*, 681 F.3d 853, 865 (6th Cir. 2012) (citation omitted). Plaintiff did not present any information showing that he was no longer a habitual offender. *Dodd v. Simmons*, 655 F. App'x 322, 327 (6th Cir. 2016) ("a police officer has no duty to search for exculpatory facts if the facts within the officer's knowledge establish probable cause."); *Klein v. Long*, 275 F.3d 544, 552 (6th Cir. 2001) ("'[L]aw enforcement is under no obligation to give any credence to a suspect's story ... nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.'") (citation omitted).

    Here, based upon the information known to Defendant at that time, it would not be clear to a reasonable officer that she could not rely on the information in the NCIC report and the confirmation by dispatch. *See Feathers*, 319 F.3d at 848 ("On the ultimate question of whether the officers acted reasonably under the circumstances and are entitled to qualified immunity from civil liability, we must agree with the officers that this is a dispatcher case: Knowing only what the

9

dispatcher told them, the officers cannot be held civilly liable for the search."); *Smoak v. Hall*, 460 F.3d 768, 782 (6th Cir. 2006) (citing *Feathers*, 319 F.3d at 849); *Howard*, 2014 WL 4851693, at *8 (finding officer entitled to qualified immunity where it would not be clear to a reasonable officer that he could not rely on information provided by Central Dispatch about an NCIC report, coupled with observations of the types of behavior the plaintiff was engaging in on the dates in question, to determine that probable cause existed to arrest the plaintiff). Thus, even if there had been a constitutional violation, Defendant would be entitled to qualified immunity.

### 2. Submitting the Citation four Days after the Traffic Stop

Plaintiff concedes that he was driving on a revoked license on January 23, 2017, (Docket Entry No. 52, at ¶ 4), and he admitted to that violation at the time of the traffic stop and was informed by Defendant that he would be arrested for that offense. The fact that Defendant submitted the citation for driving on a revoked license four days later did not render the citation a "false citation." Excepted in limited circumstances that do not apply here, Tenn. Code Ann. § 40-2-102(a) provides that "all prosecutions for misdemeanors shall be commenced within the twelve (12) months after the offense has been committed . . . ." Defendant attests that she discussed the details with the Judicial Commissioner and that she told the Judicial Commissioner that she forgot to submit the citation on January 23, 2017. Plaintiff has not submitted any evidence refuting this fact. The Judicial Commissioner signed the citation. It is undisputed that Defendant had probable cause to arrest Plaintiff on January 23, 2017 for driving on a revoked license. Accordingly, the Magistrate Judge concludes that Plaintiff fails to show that Defendant committed a constitutional violation by submitting the citation for driving on a revoked license four days after the traffic stop. Moreover, Plaintiff cannot show that any such violation involved a clearly established constitutional right.

10

As to Plaintiff's arrest on February 4, 2017, Plaintiff alleges that he was arrested based upon an outstanding warrant from Robertson County from the January 27, 2017 citation. However, the Davidson County paperwork does not reference any of the citations stemming from the January 23, 2017 traffic stop. Plaintiff has not presented any documentation or any other admissible evidence showing that Plaintiff was arrested based upon the January 27, 2017 traffic citation. Further, even if Plaintiff's Davidson County arrest for parole violation was based upon Plaintiff's traffic violations in Robertson County, Plaintiff, by his own admission, was guilty of driving on a revoked license. Thus, the date of when Defendant submitted that citation is irrelevant.

### 3. Other Claims

In her brief, Defendant addresses claims for alleged violations of the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment. (Docket Entry No. 38, at 10-12). As a practical matter, Plaintiff never amended his complaint to include these claims. In his "Memorandum in Support of Plaintiff's 42 U.S.C. 1983 Civil Rights Complaint," Plaintiff cites violations of the Eighth Amendment and the Equal Protection Clause. (Docket Entry No. 2, at 1). There are no factual allegations in either his complaint or his memorandum in support of these claims. Plaintiff's claims are insufficiently developed. Defendant cites Plaintiff's deposition where he alleges that the handcuffs hurt, it was cold outside, he sat in the officer's car for hours, he sat on concrete for hours at the Robertson County Jail, he had no privileges, he slept on the concrete overnight and did not get his medication. (Docket Entry No. 38, at 10; Docket Entry No. 37-4, at pp. 33-36).

11

"The Eighth Amendment proscribes the unnecessary and wanton infliction of pain against prisoners." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Here, Defendant was not Plaintiff's jailer. Nor does Plaintiff allege any facts that Defendant deprived him of anything.

Plaintiff states that his handcuffs hurt. "The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Miller v. Sanilac Cty.*, 606 F.3d 240, 252 (6th Cir. 2010). "To plead successfully a claim of excessively forceful handcuffing, the plaintiff must allege physical injury from the handcuffing." *Courtright v. City of Battle Creek*, 839 F.3d 513, 519 (6th Cir. 2016). "[W]hen there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment." *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001) (footnote omitted). "In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained that the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Miller*, 606 F.3d at 252 (citations omitted). Here, Plaintiff has not presented any evidence in support of a claim for excessively forceful handcuffing. *Id.*; *Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005). Further, Plaintiff's vague allegations that it was cold outside, he sat in the officer's car for hours, and he sat on concrete for hours at the Robertson County Jail do not rise to level of showing excessive force or a deprivation of his constitutional rights.

Lastly, as to Plaintiff's Equal Protection claim, Plaintiff has not presented or even alleged any facts in support of such a claim. There is no evidence in the record showing any disparate treatment towards Plaintiff.

Accordingly, for the reasons stated above, the Magistrate Judge concludes that these claims are without merit.

## V. RECOMMENDATION

Accordingly, for these reasons, the Magistrate Judge **RECOMMENDS** (1) that Defendant's motion for summary judgment (Docket Entry No. 37) be **GRANTED;** (2) that the remaining pending motion (Docket Entry No. 70) be **DENIED AS MOOT**; (3) that acceptance and adoption of this Report and Recommendation constitute **FINAL JUDGMENT** in this action; and (4) that any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

The parties have fourteen (14) days after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 17th day of June, 2019.

/s/     Joe  B.  Brown
JOE B. BROWN
United States Magistrate Judge